# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA *et al.*, | ) <br> ) <br> ) Civil Action No.: 2-20-CV-03850 |
| Plaintiffs, | ) <br> ) |
| v. | ) Judge Petrese B. Tucker <br> ) |
| KATHY BOOCKVAR *et al.*, | ) <br> ) |
| Defendants. | ) |

## THE REPUBLICAN COMMITTEES' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

**TABLE OF CONTENTS**

I. BACKGROUND ........................................................................................................... 2

    A. The Republican Committees ............................................................................... 2

    B. Procedural History. ............................................................................................. 4

II. THE REPUBLICAN COMMITTEES ARE ENTITLED TO INTERVENE OF RIGHT .................................................................................................................. 5

    A. The Motion to Intervene Has Been Timely Filed. .............................................. 5

    B. The Republican Committees Have a Significant Interest In the Litigation. ...... 6

    C. The Republican Committees' Interests May Be Affected or Impaired by Disposition of This Action. .................................................................................. 8

    D. The Republican Committees' Interests Are Not Adequately Represented by the Existing Defendants. ...................................................................................... 9

III. ALTERNATIVELY, THE COURT SHOULD GRANT THE REPUBLICAN COMMITTEES PERMISSIVE INTERVENTION ................................................. 12

CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Anderson v. Babb*,
   632 F.2d 300 (4th Cir. 1980) ...................................................................................................7

*Brody v. Spang*,
   957 F.2d 1108 (3d Cir. 1992) ................................................................................................12

*Citizens United v. Gessler*,
   No. 14-002266, 2014 U.S. Dist. LEXIS 128669, 2014 WL 4549001
   (D. Colo. Sept. 15, 2014) .........................................................................................................7

*Clark v. Putnam Cty.*,
   168 F.3d 458 (11th Cir. 1999) ...............................................................................................11

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,
   788 F.3d 312 (D.C. Cir. 2015) .................................................................................................9

*In re Fine Paper Antitrust Litig.*,
   695 F.2d 494 (3d Cir. 1982) .................................................................................................5, 6

*Gilhool v. Chairman & Com. Phila. Cty. Bd. of Elections*,
   306 F. Supp. 1202 (E.D. Pa. 1969) ..........................................................................................7

*Harris v. Pernsley*,
   820 F.2d 592 (3d. Cir. 1987) ..............................................................................................5, 12

*Hastert v. State Bd. of Elections*,
   777 F. Supp. 634 (N.D. Ill. 1991) ............................................................................................7

*Libertarian Party of Mich. v. Johnson*,
   No. 12-12782, 2012 U.S. Dist. LEXIS 126096 (E.D. Mich. Sept. 5, 2012) .............................7

*Libertarian Party of Pa. v. Wolf*,
   No. 20-2299, 2020 U.S. Dist. LEXIS 124200 (E.D. Pa. July 14, 2020) ..................................6

*Meek v. Metro. Dade Cty.*,
   985 F.2d 1471 (11th Cir. 1993) .............................................................................................11

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d. Cir. 1995) .....................................................................................................5

*Ohio Democratic Party v. Blackwell*,
   No. 04-1055, 2005 WL 8162665 (S.D. Ohio Aug. 26, 2005) ..................................................7

*Orloski v. Davis*,
   564 F. Supp. 526 (M.D. Pa. 1983) ................................................................................6, 7, 10

*Pa. Dem. Party v. Boockvar*,
   No. 133 MM 2020 (Aug. 16, 2020) (Ex. __) ............................................................................12

*Pa. Democratic Party v. Republican Party of Pa.*,
   No. 16-5664, 2016 U.S. Dist. LEXIS 153944 (E.D. Pa. Nov. 7, 2016) .............................7, 10

*Pa. v. President of the United States*,
   888 F.3d 52 (3d Cir. 2018) ..............................................................................8, 10, 11, 12

*Pierce v. Allegheny Cty. Bd. of Elections*,
   324 F. Supp. 2d 684 (W.D. Pa. 2003) ..............................................................................6

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ............................................................................................................9

*Radogno v. Ill. State Bd. of Elections*,
   No. 1:11-cv-4884, 2011 U.S. Dist. LEXIS 134520, 2011 WL 5868225 (N.D.
   Ill. Nov. 22, 2011) ..........................................................................................................7

*Rowland v. Smith*,
   83 Pa. D. & C. 99 (Pa. Ct. Com. Pl. Dauphin 1952) .....................................................2

*Shays v. FEC*,
   414 F.3d 76 (D.C. Cir. 2005) ...................................................................................7, 8, 9

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2001) .....................................................................................7

*In re Sierra Club*,
   945 F.2d 776 (4th Cir. 1991) .........................................................................................11

*Sierra Club v. Glickman*,
   82 F.3d 106 (5th Cir. 1996) ...........................................................................................11

*Stein v. Cortes*,
   223 F. Supp. 3d 423 (E.D. Pa. 2016) (addressing recount demand for 2016
   general election ballots and noting the intervention of the Pennsylvania
   Republican Party) .........................................................................................................6

*Trinsey v. Pa.*,
   941 F.2d 224 (3d Cir. 1991) (noting the district court granted the Republican
   State Committee of Pennsylvania leave to intervene in suit challenging state
   law governing the special election procedure for filling a senatorial vacancy) ...........6, 7

*Utah Ass'n of Counties v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ................................................................................... 9, 11

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) .............................................................................................................. 8

**Statutes**

25 P.S. § 2602(a) ........................................................................................................................... 2

25 P.S. § 2831(a) ........................................................................................................................... 2

25 P.S. § 2834 ................................................................................................................................ 2

25 Pa. C.S. § 102 ......................................................................................................................... 10

52 U.S.C. § 30101(14) ................................................................................................................... 3

52 U.S.C. § 30101(15) ................................................................................................................... 2

Election Code Section 102(a) ...................................................................................................... 2

**Constitution**

Fed. R. Civ. P. 24(a)(2) ................................................................................................................. 5

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................................... 12, 13

Fed. R. Civ. P. 24(b)(3) ............................................................................................................... 12

Rule 24(a) ....................................................................................................................................... 2

Rule 24(b) ................................................................................................................................ 2, 12

Donald J. Trump for President, Inc., the Republican Party of Pennsylvania, the Republican National Committee, and the National Republican Congressional Committee (collectively "Republican Committees"), support and seek to uphold free and fair elections for all Pennsylvanians. For that reason, the Republican Committees seek to intervene in this action, which Plaintiffs have filed at the eleventh hour to change the rules for the imminent 2020 general election in which millions of Pennsylvanians will cast their votes for President, U.S. Representative, State Senator, and State Representative.

Plaintiffs' Complaint seeks declaratory and injunctive relief that would have this Court legislate sweeping change to the way mail-in ballots are processed under Pennsylvania law. In the process, Plaintiffs ask the Court to rewrite Pennsylvania's historic Act 77—with far-reaching implications for the 2020 general election and beyond. In particular, Plaintiffs seek, among other things, mandatory injunctive relief to force Defendants to establish and implement a procedure by which voters are notified of any deficiencies in their mail-in ballots and given an opportunity to cure such deficiencies.

The Republican Committees maintain that Pennsylvania's mail-in voting regime, as written and enacted by Act 77, is a commonsense and constitutional statutory scheme that both accommodates voters and protects the integrity of Pennsylvania's elections. Accordingly, the Republican Committees seek to uphold the Election Code under which they, their voters, their members, and their candidates exercise their constitutional rights to vote and to participate in elections in Pennsylvania.

Courts across the country have recognized that political parties have an interest to assert and to protect the rights of their members in elections and to defend against requests for judicial changes to election laws. Here as well, the Republican Committees have a substantial and

particularized interest in defending this action to preserve the structure of the competitive electoral environment and to ensure that Pennsylvania carries out free and fair elections. Accordingly, as explained more fully below, the Court should grant the Republican Committees intervention of right under Rule 24(a). In the alternative, and at a minimum, the Court should grant the Republican Committees permissive intervention under Rule 24(b).

I.   BACKGROUND

   A.   The Republican Committees.

Donald J. Trump for President, Inc. (the "Trump Campaign") is the principal committee for the reelection campaign of Donald J. Trump, the 45th President of the United States of America. President Trump is the presumptive Republican nominee for the office of the President of the United States of America in the upcoming November 3, 2020 General Election. The Trump Campaign seeks to intervene on its own behalf and on behalf of its candidate, President Trump. President Trump is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). *See Rowland v. Smith*, 83 Pa. D. & C. 99, 101-2 (Pa. Ct. Com. Pl. Dauphin 1952) ("candidate" under the Election Code includes one who is a candidate for nomination for President of the United States).

The Republican Party of Pennsylvania is a major political party, 25 P.S. § 2831(a), and the "State committee" for the Republican Party in Pennsylvania, 25 P.S. § 2834, as well as a federally registered "State Committee" of the Republican Party as defined by 52 U.S.C. § 30101(15). The Republican Party of Pennsylvania on behalf of itself and its members nominates, promotes, and assists Republican candidates seeking election or appointment to federal, state, and local office in Pennsylvania. It works to accomplish this purpose by, among other things, devoting substantial resources toward educating, mobilizing, assisting, and turning out voters in Pennsylvania. The

Republican Party of Pennsylvania has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to continue doing so in 2020. The Republican Party of Pennsylvania has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections.

The Republican National Committee ("RNC") is the national committee of the Republican Party as defined by 52 U.S.C. § 30101(14). The RNC manages the Republican Party's business at the national level, including development and promotion of the Party's national platform and fundraising and election strategies; supports Republican candidates for public office at all levels across the country, including those on the ballot in Pennsylvania; and assists state parties throughout the country, including the Republican Party of Pennsylvania, to educate, mobilize, assist, and turn out voters. The RNC has made significant contributions and expenditures in support of Republican candidates up and down the ballot and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to continue doing so in 2020. The RNC has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections.

The National Republican Congressional Committee is the national congressional committee of the Republican Party as defined by 52 U.S.C. § 30101(14). The NRCC's mission is to elect Republican candidates to the U.S. House of Representatives from across the United States, including from Pennsylvania's eighteen congressional districts. The NRCC works to accomplish its mission in Pennsylvania by, among other things, providing direct and indirect financial contributions and support to candidates and other Republican Party organizations; providing technical and research assistance to Republican candidates and Party organizations; engaging in

3

voter registration, voter education and voter turnout programs; and other Republican party-building activities.  The NRCC has made significant contributions and expenditures in support of Republican House candidate and in mobilizing and educating voters in Pennsylvania in the past many election cycles and intends to continue doing so in 2020.  The NRCC has a substantial and particularized interest in ensuring that Pennsylvania carries out free and fair elections.

**B.     Procedural History.**

On August 7, 2020, League of Women Voters of Pennsylvania, Urban League of Greater Pittsburgh, Amy Campbell, and William Gilligan (collectively, "Plaintiffs") filed a Complaint (ECF No. 1), seeking to rewrite Act 77 via judicial declaration and unauthorized executive rulemaking, rather than by legislation, as required by both the U.S. and Pennsylvania Constitutions.  Plaintiffs claim to have suffered a constitutional deprivation due to the absence of a uniform statewide procedure for providing mail-in voters notice and an opportunity to cure signature-related errors before rejecting mail-in ballots.  In particular, Plaintiffs claim that because the Election Code, including Act 77, does not establish a uniform, statewide procedure for providing mail-in voters notice and an opportunity to cure signature-related errors before rejecting mail-in ballots, Defendants have deprived mail-in voters of their fundamental right to vote in violation of the First and Fourteenth Amendments to the United States Constitution, their right to due process of law under the Fourteenth Amendment, and their right to equal protection.  Plaintiffs seek, among other things, mandatory injunctive relief to force Defendants to establish and implement a procedure by which voters are notified of any deficiencies in their mail-in ballots and given an opportunity to cure such deficiencies.

This case is still in its infancy.  As of the filing of this Motion, no party has filed a response to Plaintiffs' Complaint.  The docket reflects that only a handful of Defendants have been served.

## II. THE REPUBLICAN COMMITTEES ARE ENTITLED TO INTERVENE OF RIGHT

Intervention of right is appropriate when, upon a timely motion, a party:

claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  To satisfy Rule 24(a)(2), a movant must establish: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d. Cir. 1987).  As set forth below, the Republican Committees readily meet each of these four requirements, entitling them to intervention of right.

### A. The Motion to Intervene Has Been Timely Filed.

It cannot be disputed that the Republican Committees' Motion is timely.  The timeliness of a motion to intervene is "determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)).  The Third Circuit has outlined three factors to be considered when assessing the timeliness of a motion to intervene: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.  *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d. Cir. 1995) (citing *In re Fine Paper Antitrust Litig.* at 500).  Concerning the assessment of the stage of the proceeding, the critical inquiry is the degree to which any proceedings of substance on the merits have occurred.  *Mt. Top*, 72 F.3d. at 369.  The prejudice inquiry is related, as the later

in the proceedings the motion to intervene is filed, the greater the likelihood of prejudice to the opposing parties. *See In re Fine Paper Antitrust Litig.* at 500.

The Republican Committees have filed their Motion early in the litigation. The Complaint was just filed on August 7, 2020, and the named Defendants have not yet filed a responsive pleading. Consequently, no prejudice to Plaintiffs or the currently named Defendants would result by allowing the Republican Committees to intervene. To the contrary, permitting the Republican Committees to intervene at this point will allow them to assert their defenses without any delay or disruption to the litigation. The Motion is timely.

        **B.      The Republican Committees Have a Significant Interest In the Litigation.**

The Republican Committees have an interest in this litigation sufficient to warrant intervention of right. The right of political parties to intervene in cases addressing election laws and procedures has been recognized by federal courts across the country, including those in Pennsylvania. *Trinsey v. Pa.*, 941 F.2d 224, 226 (3d Cir. 1991) (noting the district court granted the Republican State Committee of Pennsylvania leave to intervene in suit challenging state law governing the special election procedure for filling a senatorial vacancy); *Libertarian Party of Pa. v. Wolf*, No. 20-2299, 2020 U.S. Dist. LEXIS 124200, *9 (E.D. Pa. July 14, 2020) (noting Pennsylvania Democratic Party's intervention in suit seeking invalidation of in-person signature and witnessing requirements for minor political party candidates seeking to qualify for the November ballot); *Stein v. Cortes*, 223 F. Supp. 3d 423, 429 (E.D. Pa. 2016) (addressing recount demand for 2016 general election ballots and noting the intervention of the Pennsylvania Republican Party); *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 688 (W.D. Pa. 2003) (addressing Republican challenge to third-party delivery of absentee ballots and noting the intervention of the Pennsylvania Democratic Party); *Orloski*, 564 F. Supp. at 529 (noting

Pennsylvania Democratic State Committee's intervention in suit challenging Pennsylvania statute governing election of Commonwealth Court judges); *Gilhool v. Chairman & Com. Phila. Cty. Bd. of Elections*, 306 F. Supp. 1202, 1205 (E.D. Pa. 1969) (allowing Philadelphia County Democratic Executive Committee and Republican City Committee to intervene in suit to enjoin the City of Philadelphia from using voting machines allegedly favoring major party candidates).[1] As one court has noted, committees of the Republican Party have "an interest in the subject matter of [a] case," when "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the . . . Republican Party." *See Ohio Democratic Party v. Blackwell*, No. 04-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

Here as well, the Republican Committees have distinct interests implicated by this litigation. *See Orloski v. Davis*, 564 F. Supp. 526, 530-31 (M.D. Pa. 1983); *Pa. Democratic Party v. Republican Party of Pa.*, No. 16-5664, 2016 U.S. Dist. LEXIS 153944, *8-9 (E.D. Pa. Nov. 7, 2016). The Republican Committees have a substantial interest in preventing changes to the "competitive environment" in which they, their voters, their members, and their supported candidates exercise their constitutional rights to vote and to participate in elections in Pennsylvania. *See Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005). Indeed, the Republican Committees have made significant investments in support of Republican voters and candidates for the past many election cycles and intend to continue doing so in 2020. Since their supported

---

[1] *See, e.g., Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001); *Trinsey v. Pennsylvania*, 941 F.2d 224, 226 (3d Cir. 1991); *Anderson v. Babb*, 632 F.2d 300, 304 (4th Cir. 1980); *Democratic Nat'l Comm.*, 2020 WL 1505640, at *5; *Citizens United v. Gessler*, No. 14-002266, 2014 U.S. Dist. LEXIS 128669, 2014 WL 4549001, at *2 (D. Colo. Sept. 15, 2014); *Libertarian Party of Mich. v. Johnson*, No. 12-12782, 2012 U.S. Dist. LEXIS 126096 (E.D. Mich. Sept. 5, 2012); *Radogno v. Ill. State Bd. of Elections*, No. 1:11-cv-4884, 2011 U.S. Dist. LEXIS 134520, 2011 WL 5868225, *1 (N.D. Ill. Nov. 22, 2011); *Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 639 (N.D. Ill. 1991).

candidates seek election or reelection "in contests governed by the challenged rules," they have a clear and obvious interest in "demand[ing] adherence" to those requirements. *Id.* at 88. That interest is especially strong here: the Republican Committees seek to uphold Act 77, the historic bipartisan overhaul to the Pennsylvania Election Code that ushered in "no-excuse" mail-in voting subject to safeguards designed to ensure the integrity of the election process. The Court should grant intervention.

### C. The Republican Committees' Interests May Be Affected or Impaired by Disposition of This Action.

The relief that Plaintiffs demand in this action would directly and substantially impair the rights and interests of the Republican Committees. In evaluating this factor, courts "may consider any significant legal effect on the applicant's interest, including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention." *Pa. v. President of the United States*, 888 F.3d 52, 59 (3d Cir. 2018) (internal quotation marks omitted). The Third Circuit also follows a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Id*.

If Plaintiffs' action succeeds, the orderly administration of Pennsylvania's elections will be upended shortly before a critical general election. Not only would this outcome "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008), but it also would change the "structur[e] of [the] competitive environment" in Pennsylvania's elections and "fundamentally alter the environment in which [the Republican Committees] defend their concrete interests (e.g., their interest in . . . winning [elections])," *Shays*, 414 F.3d at 86. This outcome could force the Republican Committees to face a "broader range of competitive tactics than" Pennsylvania

"would otherwise allow," *Shays*, 414 F.3d at 86, and necessarily would require the Republican Committees to spend substantial resources informing their Republican voters of changes in the law, fighting inevitable confusion, and galvanizing participation as a result of such a change.

Moreover, such extremely late changes also risk confusing voters and undermine confidence in the electoral process. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). Such interference with Pennsylvania's election scheme—and with the Republican Committees' electoral activities—would impair the Republican Committees' interests on behalf of their candidates, members, and themselves, and thus warrants intervention.

### D. The Republican Committees' Interests Are Not Adequately Represented by the Existing Defendants.

Plaintiffs clearly do not represent the Republican Committees' interests in this case, and the named Defendants do not adequately represent them either. The Defendants are the State's primary elections officers and certain county Boards of Election and their members. Although the Republican Committees and the named Defendants putatively share the same overall goal of upholding Act 77 against judicial amendment, their interests are not identical, and "the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [private movant] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001); *see also, e.g.*, *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties.") (citing *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003)).

9

Indeed, the private interests of the Republican Committees at stake in this litigation are fundamentally different from, and far narrower than, the broad public interests represented by the named Defendants. All of these Defendants are statutorily required to remain impartial in elections. *See e.g.*, 25 Pa. C.S. § 102 (Department of State administers the Election Code); § 201 (outlining the duties of the Secretary of the Commonwealth); § 301 (outlining the duties of county Boards of Election). Interests "are not adequately represented if they diverge sufficiently from the interests of the existing party, such that the existing party cannot devote proper attention to the applicant's interests." *President of the United States*, 888 F.3d at 60 (internal quotation marks omitted). "This burden is generally 'treated as minimal' and requires the applicant to show 'that representation of his interest '*may be*' inadequate.'" *Id*. (emphasis in original) (quoting *Mt. Top Condo Ass'n*, 72 F.3d at 368 (in turn quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). And, although "a rebuttable presumption of adequacy applies if one party is a government entity charged by law with representing the interests of the applicant for intervention[,] …when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of overcoming that presumption] is comparatively light." *Id*. at 60-61 (internal quotation marks omitted).

The Republican Committees have satisfied that minimal burden. The Republican Committees seek leave to intervene in order to protect their own party, candidates, and voters, which political parties and candidates have a distinct right to protect. *See Orloski*, 564 F. Supp. at 530-31; *Pa. Democratic Party*, 2016 U.S. Dist. LEXIS 153944 at *8-9. The Republican Committees accordingly have particularized interests in maintaining the competitive electoral environment in Pennsylvania, while the impartial Defendants have no interest in the election of

10

particular candidates. *See, e.g.*, *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (holding the government's representation of the general public interest did not adequately represent the intervenor's narrower private interests, despite the similarity in their goals). Instead, in acting on behalf of the public, the named Defendants must consider "a range of interests likely to diverge from those of the [Republican Committees]." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). In other words, "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of [a private party] intervenor." *Utah Ass'n of Counties*, 255 F.3d at 1256. These considerations may include "the expense of defending the current [laws] out of [state] coffers," *Clark v. Putnam Cty.*, 168 F.3d 458, 461–62 (11th Cir. 1999), "the social and political divisiveness of the election issue," *Meek*, 985 F.2d at 1478, "their own desires to remain politically popular and effective leaders," *id.*, and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991).

That the named Defendants may take these other interests into account alone demonstrates that their interests may diverge from the Republican Committees' interests throughout this litigation and, thus, that they may not adequately represent the Republican Committees' interests. *President of the United States*, 888 F.3d at 60–61. But if more were somehow needed, at least one of the name Defendants already has demonstrated a divergence of interests from the Republican Committees in currently pending litigation. In particular, Secretary Boockvar has advocated to the Pennsylvania Supreme Court a construction of Act 77 that is diametrically opposed to the construction that the Republican Committees have adopted as a matter of the plain statutory text. In particular, Secretary Boockvar has told the Pennsylvania Supreme Court that the Pennsylvania Election Code permits county boards of election to accept absentee and mail-in ballots returned

11

after Act 77's Election Day received-by deadline, to establish drop-boxes for the return of such ballots, and to count such ballots that are returned without a secrecy envelope. *See* Secretary Boockvar's Application For The Court To Exercise Extraordinary Jurisdiction, *Pa. Dem. Party v. Boockvar*, No. 133 MM 2020 (Aug. 16, 2020) (Ex. A). The Republican Committees explained to the Pennsylvania Supreme Court, however, that Act 77 prohibits, rather than permits, each of these actions. *See* Republican Committee Respondents' Answer To Secretary Boockvar's Application, *Pa. Dem. Party v. Boockvar*, No. 133 MM 2020 (Aug. 20, 2020) (Ex. B**)**. Regardless of the merits of those issues (which are not before this Court), the Secretary's willingness to advocate an a textual construction of Act 77 further underscores that Defendants "*may be* inadequate" representatives of the Republican Committees' interests in upholding Act 77 and the free and fair election regime it creates. *President of the United States*, 888 F.3d at 60. The Court should grant the Republican Committees intervention of right.

### III. ALTERNATIVELY, THE COURT SHOULD GRANT THE REPUBLICAN COMMITTEES PERMISSIVE INTERVENTION

Even if this Court declines to grant intervention of right, it still should grant the Republican Committees permissive intervention. Rule 24(b) provides for permissive intervention where a party timely files a motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Intervention under Rule 24(b) is a "highly discretionary decision" left to the judgment of the district court. *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *accord Harris*, 820 F.2d at 597. In exercising its broad discretion under this Rule, the Court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

The Republican Committees check each box for permissive intervention. *First*, as explained above, their motion is timely. *See supra* Part II.A.

12

*Second*, the Republican Committees will raise defenses that share many "common" questions with the parties' claims and defenses. Fed. R. Civ. P. 24(b)(1)(B). Plaintiffs contend that the Commonwealth has violated the Constitution by allegedly failing to provide a uniform statewide procedure for providing mail-in voters notice and an opportunity to cure signature-related errors before rejecting mail-in ballots. The Republican Committees disagree and contend that Pennsylvania's mail-in voting scheme, as written and enacted in Act 77, is constitutional and enforceable. They also maintain that the Court should uphold the non-severability clause that animated the grand bipartisan compromise that the General Assembly and the Governor struck in enacting Act 77.

*Finally*, the Republican Committees' intervention will not delay this case or prejudice the parties. As explained above, this case has only begun, so intervention will impose no additional delay. *See supra* Part II.A. The Republican Committees will follow any schedule the Court sets. And allowing the Republican Committees to intervene would prevent any piecemeal litigation or the need for collateral challenges to a settlement or appeals from an order that may prejudice them.

## CONCLUSION

The Court should grant the Republican Committees intervention of right or, in the alternative, permissive intervention.

Dated:  September 1, 2020

Respectfully submitted,

*/s/ Kathleen A. Gallagher*
Kathleen A. Gallagher (PA #37950)
Ronald L. Hicks, Jr. (PA #49520)
Russell D. Giancola (PA #200058) *
PORTER WRIGHT MORRIS & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222 / (412) 235-4500
kgallagher@porterwright.com
rhicks@porterwright.com
rgiancola@porterwright.com

John M. Gore *
E. Stewart Crosland *
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001 / Phone: (202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com

*Counsel for Proposed Intervenor-Defendants
Donald J. Trump for President, Inc.,
the Republican Party of Pennsylvania,
the Republican National Committee, and
the National Republican Congressional Committee*

*Pro hac vice motion forthcoming*